1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## EASTERN DISTRICT OF CALIFORNIA

10

| | | |
|---|---|---|
| CAROLINA CARDENAS, | ) | 1:10-cv-2417 LJO-BAM |
| | ) | |
| Plaintiff, | ) | **FINDINGS AND RECOMMENDATIONS** |
| | ) | **REGARDING PLAINTIFF'S SOCIAL** |
| v. | ) | **SECURITY COMPLAINT** |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

16
17
18

## BACKGROUND

19      Plaintiff Carolina Cardenas ("Plaintiff") seeks judicial review of a final decision of the

20 Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

21 supplemental security income benefits pursuant to Title XVI of the Social Security Act.  The matter

22 is currently before the Court on the parties' briefs, which were submitted, without oral argument, to

23 Magistrate Judge Barbara A. McAuliffe, for findings and recommendations to the District Court.

24      **FACTS AND PRIOR PROCEEDINGS**[1]

25      On December 13, 2006, Plaintiff filed her first application for disability insurance benefits

26
27

---

28      [1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

(DIB) under Title XVI,  of the Social Security Act (the Act), alleging disability beginning August 1, 2002.  AR 228.  Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  AR 30-43.  ALJ Sandra K. Rogers, held a hearing and issued an order denying benefits on May 26, 2009, finding Plaintiff was not disabled.  AR 72-84.  On September 24, 2009, however, the Appeals Council remanded the case for further proceedings.  AR 86-89.  On April 28, 2010, the ALJ conducted a second hearing, at which Plaintiff testified.  AR 44-62.  Following the hearing, ALJ Rogers, issued a July 2010 decision finding Plaintiff not disabled.  AR 12-29.  This appeal followed.

**2009 Hearing Testimony**

ALJ Sandra K. Rogers held a hearing on February 10, 2009, in Stockton, California.  Plaintiff appeared and testified. She was represented by attorney Poson.  Vocational Expert ("VE") Stephen B. Schmidt also testified.  AR 32.  At the 2009 hearing, Plaintiff testified regarding her back pain and mental health issues.  Plaintiff stated that she had "severe lumbar pain" that "radiates down [her] legs," as well as "[s]evere hip pain with arthritis."  AR 32-33.  She testified that her pain was caused by a car accident in 2002.  AR 33.  Plaintiff stated that she experiences back pain everyday but her pain medication helped and caused no side effects. AR 33-34.  She testified that she previously worked as a cashier at Wal-Mart and K-Mart, but had not worked since her accident in 2002.  AR 34.  Plaintiff stated she had very low energy, low self-esteem, and did not like to be around other people. AR 35-37.  She gets anxious in crowds and prefers to isolate herself.  AR 35.

When asked about her recent weight loss, Plaintiff stated that she had formerly weighed 330 pounds.  AR 39.  She underwent gastric bypass surgery, which resulted in a 140 pound weight loss and she currently weighed  220 pounds.  AR 39.  She has no friends, and her main motivation is her children.

**2010 Hearing Testimony**

ALJ Sandra K. Rogers held second a hearing on April 28, 2010, in Stockton, California. Plaintiff appeared and testified. She was represented by attorney Terri Issac.  Vocational Expert ("VE") Michael L. Stinson also testified.  AR 15.

At the time of the 2010 hearing, Plaintiff was twenty-five years old and weighed 319 pounds.[2]  Plaintiff lives with her parents, her brother and her three children. She has an 11th grade education and went to school to obtain a medical assistant certification, but never completed the program.  AR 47.  Plaintiff said that she previously worked as a cashier at Wal-Mart and K-Mart. AR 48.

Plaintiff stated that she suffers from depression, panic attacks, and anxiety.  AR 48.  With respect to the frequency of her symptoms, Plaintiff stated that she has panic attacks three to four times per week and she takes Klonopin whenever she feels a panic attack starting. AR 48. Although Plaintiff only suffers from panic attacks three to four times a week, she takes two Klonipin twice a day.  AR 49.

Asked to describe a typical day, Plaintiff said she generally goes to bed at night around 10:00pm and gets up around 7:00am to get her daughter ready for school.  AR 49.  She then goes back to bed and wakes an hour later to get her sons up so that she can feed them and watch tv with them.  AR 49.  Every day, Plaintiff relies on her oldest daughter (8 years old) to bathe and feed her younger sons, ages 4 and 3 because she is too depressed to do so. AR 49-50.  She spends about 8 hours in bed during the day, but plays with her kids outside in the morning and cooks meals about two to three times a week.  AR 51.  Plaintiff stated she is, however, unable to do chores, due to her back pain.  AR 51.

With respect to her back pain, Plaintiff stated she suffers from lower back pain about three times a week.  AR 51.  The pain goes down to her left knee.  AR 52.  To help with her back pain, Plaintiff takes Methadone.  AR 52. With the use of her medication, Plaintiff can bend over, tie her shoes, and dress herself.  She cannot lift her three year old son, who weighs 30 pounds, but she can lift 15 to 20 pounds. AR 52. Plaintiff also suffers from arthritis in her hands and knees, which she also treats with Methadone.  AR 53.  In addition to Methadone, Plaintiff also takes Lithium, Abilify,

---

[2]        In 2004, Plaintiff underwent gastric bypass surgery which resulted in a 140 pound weight loss.  AR 39.  In late 2008, Plaintiff asked for the surgery to be reversed.  AR 409.  At the hearing in 2010, Plaintiff had regained all of her weight lost from her gastric bypass surgery.

Trazadone, Effexor, and Klonopin. The side effects from these medications include sleepiness, vertigo, and fatigue.  AR 53.

With respect to Plaintiff's drug use, Plaintiff testified that she was attending rehabilitation for her addiction at Aegis, but no longer attends.  According to Plaintiff, she has been clean and sober for over four years. AR 56.

Thereafter, the ALJ elicited the testimony of vocational expert Stinson. AR 59.

The VE was asked to consider a  hypothetical question posed by the ALJ.  First, VE Stinson was asked to consider a hypothetical worker of Plaintiff's age, education, and work experience who is capable of performing medium work that does not involve contact with the public and requires only minimal interaction with coworkers and supervisors, and which involves only simple, repetitive tasks.  AR 59.  VE Stinson indicated such an individual could perform work as a janitor at the medium level. VE Stinson explained, that work would involve night shift work with only occasional contact with a coworker or supervisor.

According to the VE, Plaintiff could also perform a number of light, unskilled jobs including housekeeping cleaner and sewing machine operator.

Plaintiff's counsel asked the VE to consider the same individual as posed in the first hypothetical, with an additional limitation that the hypothetical worker has marked difficulties in maintaining social functioning, concentration, persistence and pace; the VE indicated that such an individual could still perform work as a janitor and housekeeping cleaner.  AR 61.

Plaintiff's counsel then asked the VE to consider an individual who had a poor ability to deal with work stress, a poor ability to function independently, a poor ability to maintain attention and concentration; the VE indicated that those factors would erode Plaintiff's base to perform work.  AR 60.

**Medical Record**

The entire medical record was reviewed by the Court.  AR 282-618.  The medical evidence will be referenced below as necessary to this Court's decision.

4

1   **ALJ's Findings**

2       Using the Social Security Administration's five-step sequential evaluation process, the

3   ALJ determined that Plaintiff did not meet the disability standard.  AR 15-29.

4       More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity

5   since her application date of December 13, 2006. AR 18.  Further, the ALJ identified several severe

6   mental and physical impairments including drug abuse, bipolar disorder, arthralgias, obesity, and

7   status post gastric bypass surgery.  The ALJ determined that the severity of Plaintiff's impairments

8   met Listing 12.09 (substance abuse addiction) and Listing 12.04 (affective disorder).   AR 18.  The

9   ALJ found Plaintiff is disabled when her Drug Addiction and Alcoholism ("DAA") is included.

10      Based on finding Plaintiff disabled and DAA present, the ALJ conducted the required second

11  sequential evaluation to determine whether DAA is material to the disability determination.  The

12  ALJ found that if Plaintiff's substance abuse were eliminated, her remaining impairments would not

13  meet or equal a Listing.  AR 19.  *See* 20 C.F.R. § 416.935 (noting that if the Commissioner finds

14  an individual disabled, and that evidence shows drug addiction or alcoholism, the Commissioner

15  must determine whether the drug addiction or alcoholism is material to the finding of disability).

16  According to the ALJ, if Plaintiff stopped abusing drugs, she would have the residual functional

17  capacity (RFC) to perform medium work, but could not interact with the public, could interact with

18  coworkers and supervisors only minimally, and could perform only simple, repetitive tasks.  AR 19.

19      Next, the ALJ found that Plaintiff had no past relevant work (AR 26), but when DAA is

20  excluded, she could perform other jobs that existed in significant numbers in the national economy,

21  including sewing machine operator, janitor, and housekeeping cleaner.  AR 27-28.  Plaintiff would

22  not be disabled if she stopped abusing substances, and therefore, DAA is a contributing factor

23  material to the disability determination. The ALJ concluded that Plaintiff is barred from receiving

24  benefits and is not disabled as defined by the Act. AR 28-29.

25                          **SCOPE OF REVIEW**

26      Congress has provided a limited scope of judicial review of the Commissioner's decision to

27  deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this

28  Court must determine whether the decision of the Commissioner is supported by substantial

evidence.   42 U.S.C. § 405 (g).   Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.   *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).   It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.   The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).   This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A).   A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).   The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Here, Plaintiff argues that the ALJ's findings are not supported by substantial evidence and are not free of legal error because the ALJ erred: (1) by finding that her drug abuse was material to her disability; (2) in determining her RFC; and (3) at step five of the sequential evaluation process by finding that she could perform jobs that existed in significant numbers.

1        **<u>DISCUSSION</u>**

2        ***1.     Evaluation of Drug Use***

3            Plaintiff contends that the ALJ erred in determining that her drug abuse is a contributing

4    factor to her disability.  (Doc. 15 at 5).

5            In this case, the ALJ conducted the DAA analysis, first finding that Plaintiff's mental

6    impairments met Listing 12.09 ("substance addiction disorder") because she met Part A criteria of

7    the Listing (substance use) and Part B (moderate restriction in activities of daily living, marked

8    difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace).

9    Next, the ALJ considered whether Plaintiff would be disabled if she stopped the substance use.  The

10   ALJ found that Plaintiff's incapacitation was the result of substance abuse and that it was reasonable

11   to assume that most of the associated symptoms of loss of functional capacity would be significantly

12   alleviated were Plaintiff to abstain from substance abuse.  AR 19.  The ALJ concluded, if Plaintiff

13   stopped using drugs, her impairments would remain severe, but would not meet a Listing.  Plaintiff

14   would retain the ability to perform medium work involving simple, repetitive tasks, that do not

15   involve contact with the public and require only minimal interaction with co-workers and

16   supervisors.  AR 18-19.  Therefore, the ALJ concluded Plaintiff's substance use disorder was a

17   contributing factor material to the determination of disability and found Plaintiff not disabled.  20

18   C.F.R. §§ 404.1535, 416.935.

19           A claimant is ineligible for benefits if alcoholism or drug addiction would "be a contributing

20   factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. §

21   423(d)(2)(C); *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007).  In a case with evidence of drug

22   or alcohol abuse, the claimant bears the burden of proving that her substance abuse "is not a

23   contributing factor material to her disability." *Parra*, 481 F.3d at 748.  For purposes of determining

24   whether a claimant's substance abuse is a material contributing factor, the critical question is

25   whether the claimant would still be disabled if she stopped using drugs or alcohol. 20 C.F.R. §§

26   404.1535(b)(1), 416.935(b)(1). In making this assessment, the ALJ is to evaluate which of the

27   claimant's physical and mental limitations "would remain if [the claimant] stopped  using drugs or

28

7

1 alcohol and then determine whether any or all of [the claimant's] remaining limitations would be

2 disabling." 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2).

3     Plaintiff agrees that she is disabled, but contends her drug abuse does not materially

4 contribute to her disability. Although Plaintiff acknowledges she suffers from drug abuse problems,

5 she maintains she has been clean since 2006 (AR 56) and, therefore, her impairments were not

6 affected by drug use.

7     However, substantial evidence supports the ALJ's conclusion that Plaintiff's substance abuse

8 is a contributing factor material to her disability. As the ALJ noted, "no treating or examining

9 physician has mentioned findings that meet or are equivalent in severity to the criteria of any listed

10 impairment [when Plaintiff's] substance abuse was stopped." AR 19.

11     The undersigned believes that the claimant's incapacitation is the result of substance
12 abuse. It is reasonable to assume that most of the associated symptoms and loss of
    functional capacity would be significantly alleviated were the claimant to abstain
13 from substance abuse. Therefore, the claimant would not meet or medically equal
    the criteria of any of the listed impairments described in 20 CFR Part 404, Subpart
    P, Appendix 1
14 AR 19.

15 The ALJ also noted that despite Plaintiff's claims of sobriety since 2006 (AR 56), Plaintiff continued

16 to abuse drugs until early 2010. AR 21. The ALJ noted that between 2008 and 2009, Plaintiff tested

17 positive for drugs on multiple occasions:

18     • On August 15, 2008, urine test "positive for amphetamines as well as benzodizepine;
19     • August 19, 2008, urine test positive for cocaine;
    • November 4, 2008, urine test "positive for amphetamines as well as
20     benzodizepine;
    • February 3, 2009, urine test "positive for amphetamine and
21     methamphetamine;
    • April 15, 2009, Plaintiff admits to abusing prescription drugs;
22     • October 9, 2009, Plaintiff admits to abusing prescription drugs.

23     Plaintiff also had at least six hospitalizations in 2008 and 2009, all of which followed drug

24 overdoses or other drug abuse. In March 2008, Plaintiff apparently overdosed on methadone and her

25 family could not wake her. AR 395-96. Three days later, Plaintiff overdosed on medication and

26 exhibited bizarre behavior including walking around the house naked and trying to drink bleach. AR

27 374. Five months later, in August, Plaintiff had an altered level of consciousness, and urine testing

28 revealed amphetamine use. AR 384-85. Eight months after that, in April 2009, Plaintiff admitted

1   herself to the hospital after contemplating suicide, and she admitted to abusing prescription drugs

2   and not taking her prescribed antidepressants.  AR 468.  In September 2009, five months after her

3   last hospitalization, Plaintiff overdosed on Lithium and required hospitalization.  AR 478-79.  The

4   following month, Plaintiff's sister could not wake her and called 911.  During her hospital stay,

5   Plaintiff admitted to abusing her prescription medication. AR 476.

6         Beginning in 2010, when the record showed that Plaintiff maintained continued sobriety,

7   Plaintiff's mental status examinations showed that she had a normal mood, average or good

8   judgment and insight, and no mental health symptoms besides an anxious appearance.  AR 529, 534,

9   535.  Also in 2010, Plaintiff's counselor noted that Plaintiff was recovering from her addiction and

10  doing quite well.  AR 505.  Notably, the records for that year indicate no hospitalizations, and

11  Plaintiff's mental status examinations showed normal results during her period of sobriety. AR 535,

12  529, 582, 577, 572, 561, 573.  Thus, contrary to Plaintiff's assertions that her non-substance abuse

13  impairments "were debilitating in their own right," (Doc. 15 at 4), the record indicates that it was

14  only when Plaintiff abused drugs that she was disabled.  The record supports the ALJ's finding that

15  Plaintiff was disabled when she abused drugs, but that if she stopped abusing drugs, she would not

16  be disabled.

17        The burden is on Plaintiff to establish that DAA is not material to the disability claim.  *Parra*,

18  481 F.3d at 748.  The Court finds the ALJ did not err in finding Plaintiff's drug abuse was a

19  contributing factor material to the determination of her disability, and, therefore, Plaintiff was not

20  disabled within the meaning of the Social Security Act at any time from the date of alleged onset

21  through the date of decision.

22        ### *2.   Medical Opinion Evidence*

23        Next, Plaintiff contends the ALJ erred by failing to analyze  properly and provide clear and

24  convincing reasons for rejecting the opinions of treating physician Dr. Hunt, Nurse Practitioner

25  Bonnie Webb, examining physician Dr. Hernandez, and the medical evidence submitted to the

26  Appeals Council after the hearing from Drs. Khanna and Akhbarati.  (Doc. 15).

27        Cases in this circuit distinguish among the opinions of three types of physicians: (1) those

28  who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d at 647. At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450. As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456. In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor. *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir. 1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995). For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians . . .." *Magallanes*, 881 F.2d at 752. Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating

physician's opinion.  *Id.* at 751-52.  The opinions of nonexamining physicians are substantial

evidence where they are supported by clinical findings and objective tests.  *Id.*

### Dr. Hunt

Plaintiff argues that the ALJ failed to provide the requisite reasons for rejecting the treating

physician's opinion.  (Doc. 15 at 10).

With regard to Plaintiff's treating physician, Dr. Hunt, ALJ Rogers found:

A medical Assessment of Ability to Do Work Related Activities (Mental) was
completed by Cynthia Hunt, M.D. with Golden Valley Health Centers and dated
September 25, 2008.  The claimant was diagnosed with panic disorder, major
depression, recurrent opiate dependence, and rule out bipolar disorder.  The claimant
had generally fair to poor abilities to make occupational, performance, and
person/social adjustments.  She had a mild restriction of activities of daily living;
marked difficulties in maintaining social functioning; and marked difficulties in
maintaining concentration, persistence or pace.  She had a marked degree of
limitation with episodes of decompensation, each of extended duration.  Dr. Hunt
anticipated that on the average, the claimants impairments or treatment would cause
her to be absent from work more than four times per month.  Dr. Hunt completed
another Medical Assessment of Ability to Do Work Related Activities (Mental) that
was dated August 6, 2009.  The claimant was diagnosed with bipolar II and panic
disorder.  Dr. Hunt indicated that the claimant had generally poor abilities to make
occupational, performance, and personal/social adjustments.  There was insufficient
evidence of restriction of activities of daily living; marked difficulties in maintaining
social functioning; and marked difficulties in maintaining concentration, persistence
or pace.  She had a moderate degree of limitation with episodes of decompensation,
each of extended duration.  Dr. Hunt anticipated that on the average, the claimants
impairments or treatment would cause her to be absent from work more than four
times per month.  I give little weight to Dr. Hunt's findings as their severity is not
supported by the medical records and they are not consistent with other substantial
evidence in the record.  These drastic difference may be the possible result of
sympathy for the patient or an effort to avoid unnecessary tension with the patient
after a demand for supporting material by the patient.  I note that in her second
assessment dated August 6, 2009. Dr. Hunt did not diagnose the claimant with a
substance abuse disorder (which could be responsible for some or all of claimant's
problems) despite evidence of substance abuse problems.

AR 26.

The ALJ explained that Dr. Hunt's opinion was not supported by the record and was

inconsistent with other substantial evidence.  AR 26.  Both were proper reasons for rejecting a

treating source's opinion.  *See* 20 C.F.R. §§ 416.927(d)(3) (supportablility), (4) (consistency).

First, inconsistency with the medical record is a specific and legitimate reason for affording

a treating physician's opinion less weight.  *Magallanes v. Bowen*, 881 F.2d at 751 (a lack of

supporting clinical findings is a valid reason for rejecting a treating physician's opinion).  The ALJ

noted "drastic differences" between Dr. Hunt's opinion and the treatment notes in the record.  AR

26-27.  For example, Dr. Hunt wrote that Plaintiff had a poor ability to maintain attention and concentration, and a poor ability to understand, carry out, and remember detailed or complex instructions AR 401-02.

However, examining source Dr. Scaramozzino noted that Plaintiff's attention and concentration were within normal limits (AR 332), and identified only slight limitations in her ability to perform simple or detailed tasks.  AR 333.  The ALJ did not err in relying on the opinion of Dr. Scaramozzino over the opinion of Dr. Hunt.  Dr. Scaramozzino opined that Plaintiff's mood was within normal limits, she was fully oriented, had average intellectual functioning, intact memory, had a fund of knowledge consistent with her education and socioeconomic background, was able to perform calculations, showed concentration within normal limits, was able to abstract within normal limits, and had judgment and insight also within normal limits.  AR  331. He assigned Plaintiff a GAF score of 62,[3] indicating that Plaintiff had some symptoms, but was generally functioning pretty well.  AR 331.  Although, Dr. Scaramozzino stated that at the time of the exam there was no evidence Plaintiff was engaging in substance abuse, Plaintiff tested positive for amphetamine and methamphetamine ten days after her exam.  Thus Dr. Scaramozzino's opinion does not conflict with the ALJ's DAA determination, and the rejection of Dr. Hunt's opinion.

Other evidence further undermines Dr. Hunt's opinion: Plaintiff showed a normal mental status in May 2008, including cooperative behavior, a euthymic mood, and fair concentration (AR 370); in June 2008, she reported that medications helped her symptoms (AR 419); in April 2009, while she was recovering from addiction, she was "much better" (AR 486); and throughout 2010, when Plaintiff was not abusing drugs, her mental status was normal.  AR 535, 529, 582, 577, 572, 561, 573.

Next, although the record includes several instances when Plaintiff's condition was significantly worse, such instances occurred when Plaintiff was abusing drugs.  As discussed earlier,

---

[3]      A GAF of 61-70 indicates "[s]ome mild symptoms (*e.g.*, depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (*e.g.*, occasional truancy or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."  American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders (4th ed. 2000, Text Revision) (DSM-IV), 34.

the ALJ concluded that Plaintiff had disabling limitations when she abused drugs.  AR 18.  Thus, although Dr. Hunt's opinion may have been correct with regard to the times when Plaintiff was abusing drugs, it was inconsistent with her normal mental status when she abstained from drugs.

Following review of this record, this Court finds the ALJ provided specific and legitimate reasons for affording the examining physician Dr. Scaramozzino's opinion greater weight. Therefore, ALJ Rogers did not err in rejecting the treating physicians opinion.

### Nurse Bonnie Webb

Likewise, the ALJ did not err in rejecting Nurse Bonnie Webb's opinion.  A nurse practitioner's opinion is not "an acceptable medical source' under the Social Security Regulations. "Medical sources who are not 'acceptable medical sources,' [include] nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists . . .." SSR 06-03p.

As noted by the ALJ, she gave Webb's opinion little weight because it is inconsistent with the weight of the medical evidence and made determinations on issues reserved to the Commissioner. AR 26.  An ALJ weighs a nurse practitioner's opinion based on "[h]ow consistent the opinion is with other evidence." SSR 06-3p.  As the ALJ stated, Ms. Webb's statement that Plaintiff could stand 2-4 hours per day (AR 414) is inconsistent both with Dr. Hernandez's opinion (AR 296) and Dr. Reddy's opinion.  AR 312.  Because of these inconsistencies, the ALJ legitimately gave greater weight to the opinions of medical doctors than to Ms. Webb's statements.

Finally, the ALJ is correct that a determination of a claimant's ultimate disability is reserved to the Commissioner, and that an opinion on the matter is not entitled to special significance. 20 C.F.R. § 404.1527(e).  Thus, the opinion of a medical source on the ultimate issue of disability is not conclusive.  *Magallanes,* 881 F.2d at 751.  The ALJ did not err in discounting Nurse Webb's opinion.

### Dr. Hernandez

Plaintiff also claims that the ALJ improperly assessed her RFC by omitting aspects of Dr. Hernandez's findings from the RFC.  (Doc. 15 at 6).  Specifically, Plaintiff contends that the ALJ erred by not including Dr. Hernandez's 10 pound lifting limitation.  The Court disagrees.

The ALJ rejected Dr. Hernandez's lifting limitation because it was based on a one-time examination; was inconsistent with Plaintiff's medical records; and was too restrictive. AR 24. The ALJ instead gave greater weight to the opinion of state agency physician Dr. Reddy. Dr. Reddy noted that Plaintiff's physical examination revealed normal findings other than moderate obesity. AR 316. Dr. Reddy concluded that Plaintiff's obesity would restrict her to medium lifting. AR 316.

In this case, the ALJ adopted the portions of Dr. Hernandez's opinions that she found were well supported by the medical evidence and not inconsistent with other substantial evidence in the record. AR 18. When asked about her lifting limitations, Plaintiff testified that she could not lift her 30 pound three year old child, but that she could lift 15 to 20 pounds. AR 52. Thus, Plaintiff's own testimony is inconsistent with Dr. Hernandez's lifting limitation. AR 52. Further, Plaintiff's activities of daily living are also inconsistent with Dr. Hernandez's lifting limitation. The ALJ noted that during the day, Plaintiff feeds her children, she is able to do some cleaning and laundry, and shops in stores. The ALJ further opined that "the claimant has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The claimant is able to read, watch television, help care for her children, do some housework, socialize and use the internet." AR 21. Thus, the ALJ did not err in rejecting Dr. Hernandez's lifting limitation because it conflicted with other credible evidence, including Plaintiff's own testimony.

Finally, even if the ALJ credited Dr. Hernandez's lifting limitation, which would limit Plaintiff to something between light and sedentary work, such a conclusion would not change the overall disability determination. Under the Medical-Vocational Guidelines (the Grids), Plaintiff would not be disabled whether she was limited to medium, light, or sedentary work. *See* 20 C.F.R. pt. 404, subpt. P, app. 2, §§ 203.25 (medium), 202.17 (light), 201.24 (sedentary) (all directing a finding of not disabled).

It is not necessary for the ALJ to agree with everything an expert witness says in order to hold that his testimony contains substantial evidence, where the bases for the opinion were supported by objective medical evidence. *Magallanes*, 881 F.2d at 753. The ALJ is the "final arbiter with respect to resolving ambiguities in the evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-42 (9th Cir.

1    1995).   Therefore, the ALJ did not err in disregarding Dr. Hernandez's lifting limitation when

2    assessing Plaintiff's RFC.

3        ***Drs. Khanna and Akhbarati***

4        Plaintiff asks the Court to consider the additional evidence she submitted to the Appeals

5    Council after the ALJ issued her decision.  AR 605-618.  The Court construes Plaintiff's argument

6    here to be that the Appeals Council failed to properly consider this additional evidence.

7        If new and material evidence is submitted after the ALJ's decision, the Appeals Council shall

8    consider such evidence "only where it relates to the period on or before the date of the [ALJ] hearing

9    decision." *See* 20 C.F.R. § 404.970(b). The Appeals Council will overturn an ALJ's decision only

10   when it determines, after a review of the entire record, including the new and material evidence, that

11   the decision is contrary to the weight of the evidence.   *Id.*; *see also Macri v. Chater*, 93 F.3d 540,

12   544 (9th Cir. 1996) (*citing Bates v. Sullivan*, 894 F.2d 1059, 1064 (9th Cir.1990), *overruled on other*

13   *grounds by Bunnell v. Sullivan*, 947 F.2d 341, 342 (9th Cir. 1991) (en banc)).   Moreover, in the

14   Ninth Circuit, where a claimant has submitted additional materials to the Appeals Council in

15   requesting review of the ALJ's decision, the district court may consider the new evidence "because

16   the Appeals Council addressed them in the context of denying [the claimant's] request for review."

17   *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) (*citing Ramirez v. Shalala*, 8 F.3d 1449 (9th

18   Cir. 1993)).

19       Here, the additional evidence consisted of medical opinions by Drs. Akhbarati and Khanna

20    The September 1, 2010 opinion of Dr. Laila Akhbarati, a psychiatrist at Golden Valley Health

21   Center, stated that Plaintiff suffered from PTSD, bipolar I disorder, with poor response to treatment

22   and a poor prognosis; had a fair ability to interact with supervisors; a poor ability to follow work

23   rules, relate to co-workers, deal with the public, use judgment, deal with work stress, function

24   independently, maintain attention and concentration, understand remember and carry out complex,

25   detailed and simple instructions, behave in an emotionally stable manner, relate predictably in social

26   situations, and demonstrate reliability.  Dr. Akhbarati concluded that Plaintiff had a poor ability to

27   handle 14 out 15 areas of work.  AR 607-08.

28

1    Dr. Akhbarati's post-decision opinion (AR 606-09) does not provide a basis for remand.

2    As the Appeals Council noted, Dr. Akhbarati's opinion that Plaintiff would have significant mental

3    limitations is entirely inconsistent with Plaintiff's normal mental status exams in 2010, the time of

4    Dr. Akhbarati's opinion.  AR 535, 529, 582, 577, 572, 561, 573.  Thus, Dr. Akhbarati's opinion did

5    not deserve any significant weight, and does not provide a basis for remand. *See* 20 C.F.R. §

6    416.927(d)(4) (doctors' opinions receive weight based on their consistency with the record); *see also*

7    *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (reports issued after the Commissioner's decisions

8    "are less persuasive"); *Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989) (doctor's opinion "is

9    all the less persuasive since it was obtained by [claimant] only after the ALJ issued an adverse

10   determination").

11   Likewise, Dr. Khanna's post-decision report does not provide a basis for remand.  Dr.

12   Khanna opined, after the ALJ's decision, that Plaintiff was significantly limited, such that she could

13   not lift or carry ***any*** amount; could stand and walk 15 minutes per day; and could sit 15 minutes per

14   day; could never twist, stoop, crouch, or climb; and must avoid exposure to extreme cold, heat,

15   wetness, humidity, noise, fumes, odors, dust, hazards, etc.  AR 616-17.  Dr. Khanna based his

16   extremely restrictive opinion on "labs, medical exams, x-rays, pysch eval." AR  618.

17   However, those objective measures do not support Dr. Khanna's opinion. MRIs from the

18   same post-decision period showed only minimal degenerative changes. AR 611-14.  Reports from

19   Neuroradiolgist Donald J. Widder repeatedly list Plaintiff's back and knee ailments as minimal or

20   minor. According to Dr. Widder, Plaintiff's spine has: "mild lumbar rotoscoliosis, mild degenerative

21   changes with minimal posterior osteophyte formation." AR 611.  Plaintiff's knee has evidence of

22   "minor joint effusion," and there are minimal degenerative changes at the tibiofemoral articulation

23   with minor osteophyte formation.  AR 612.  These minimal changes are hardly consistent with an

24   opinion that Plaintiff was significantly limited because of pain and physical impairments.  Likewise,

25   physical examinations from that period showed that Plaintiff had normal range of motion in her

26   back.  AR 529, 591, 582.

27   The Appeals Council correctly dismissed Dr. Khanna's opinion as irrelevant. AR 2.  *See* 20

28   C.F.R. § 416.927(d)(4) (doctors' opinions receive weight based on their consistency with the record);

*see also Macri*, 93 F.3d at 544; *Weetman*, 877 F.2d at 23.  The additional evidence submitted by the Plaintiff does not provide any additional evidence that would support a different RFC finding than that of the ALJ.  Based on the foregoing, the Court finds that the additional evidence is insufficient to warrant remand.

**3.      Conflict Between Dictionary of Occupational Titles and VE Testimony**

Finally, Plaintiff asserts that ALJ erred by relying on testimony that deviated from the Dictionary of Occupational Titles ("DOT").  Specifically, Plaintiff claims that there is conflict between the ALJ's limitation of Plaintiff to "simple, routine, repetitive tasks" and the VE's testimony that Plaintiff could perform work as a janitor, sewing machine operator, or housekeeper/cleaner.  In Plaintiff's view, the job of janitor should be precluded on its face because it is classified as semi-skilled in the DOT.  Further, according to Plaintiff, jobs as a sewing machine operator, or housekeeper/cleaner should be likewise excluded.  Plaintiff argues the ALJ limited Plaintiff to simple, repetitive tasks, yet the VE testified that an individual with poor ability to carry out detailed but not complex work could not perform these jobs.

Contrary to Plaintiff's contention, work as a janitor does not conflict with a limitation to simple, routine and/or repetitive work tasks.  The vocational expert explained at the hearing that the job of janitor, although identified in the DOT as semiskilled, exists in both semiskilled and unskilled positions, and that the vocational expert was identifying the number of unskilled janitor jobs.  AR 59-60.  He noted that the janitor jobs often involved "on-the-job training" (AR 59), which explained why he found that an individual like Plaintiff, with no past work experience or work skills and who could handle only unskilled employment, could still perform this job.  AR 59.  The VE also testified that Plaintiff could perform this work during the night shift so as to limit contact with co-workers, supervisors, and the general public.  AR 59.

Also, while Plaintiff contends that she could not work as a sewing machine operator because the vocational expert said that someone with a poor ability to carry out detailed but not complex work could not perform the job (AR 61-62), the ALJ did not include such a finding in her RFC.  Rather, the ALJ's RFC finding mirrored her hypothetical question to the VE, to which the VE responded that such an individual could work as a sewing machine operator.  AR 59-60.  The VE

explained that a person capable of performing simple, repetitive tasks could perform a job as a sewing machine operator because it only involves minimal interaction with coworkers.

Finally, while Plaintiff argues that she cannot perform work as a housekeeper/cleaner in light of her lifting and mental limitations, the Court disagrees. Housekeeper/cleaner is classified as light and unskilled, *see* 1991 WL 672783. Thus, it is consistent with the ALJ's RFC finding that Plaintiff could perform medium work in certain environments.

The VE's answer to the ALJ's question incorporating the supportable RFC criteria constitutes substantial evidence upon which the ALJ is entitled to rely. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1163-64 (9th Cir. 2001). Therefore, the ALJ properly relied on the VE's testimony regarding work Plaintiff could perform despite her limitations. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (ALJ may take administrative notice of any reliable job information, including information provided by a VE); *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir.1995) (same).

## RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for Defendant Michael J. Astrue and against Plaintiff Carolina Cardenas.

These findings and recommendations will be submitted to the Honorable Lawrence J. O'Neill pursuant to the provisions of Title 28 of the United States Code section 636(b)(l). Within fifteen (15) days after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:**   **June 18, 2012**          **/s/ Barbara A. McAuliffe**
                                   UNITED STATES MAGISTRATE JUDGE

18